Thank you. Good afternoon. This is Tracy Hayes on behalf of the defendant appellant Joel Riley. May it please the court. The sentence in this case is both procedurally and substantively unreasonable. The sentencing court relied on impermissible factors and clearly erroneous facts in imposing a term of imprisonment longer than what was necessary here. In passing sentence, the sentencing court reviewed documents filed by both parties and relied, seemed to rely heavily on a mischaracterization of Mr. Riley. That is by calling Mr. Riley a financial predator and adopting the government's view and the government's wording. The court indicated that when you look at his long history of defrauding people, he is not a first, a typical first time offender. But in fact, he was. There are two ways in which that statement is incorrect and unsupported. First, he really is a first time offender. Mr. Riley had no criminal history, no contact with the police that we know of prior to this case. I had never served any jail time. Section 3553 A to C requires that the sentencing court consider the need for the sentence imposed to protect the public from further crimes of the defendant. That factor is of less importance for first time offenders like Mr. Riley, someone with no criminal history, no rap sheet, no jail time, very minimal, if any, contact with law enforcement. It's plain error for a district court to rely upon its own unsupported theory of deterrent at sentencing, especially whereas here the theory has little application to actual facts of the case itself. And so here, by virtue of the conviction, the public attention of the same, the degree of supervision he will be subjected to after he's released his age, there is little risk for Mr. Riley of reoffending. To characterize him as anything other than a first time offender is wholly inaccurate here. He's, again, never before been experienced the process of criminal arrest, guilt, or punishment. Furthermore, Mr. Hayes, this is Judge Carney. Did you file any objection to any of the fact findings set forth in the pre-sentence report? No, we did not, Your Honor. And isn't it the case that it lays out a long series of events where, although Mr. Riley wasn't prosecuted for them, he took fraudulent acts with regard to applications for loans in $25,000 amounts, $32,000 amounts, and so on, with regard to family members. And I haven't counted, but it looks like at least maybe 15 different instances of relevant conduct. Is that a correct description of what is in the pre-sentence report that was not objected to? That's correct, Your Honor. And there's a reason for that. In characterizing him as a financial predator, the court just used the term family. So he took out these loans in particular names of family members. Well, that is the issue here. So if we think of a predator, a financial predator, we think of somebody who's stashing money away, has jewelry, cars, all the trappings, maybe trips, all of those things. And that's not what we have here. Not only in the facts in the case before this court and the court below, but even in what the court here termed as relevant conduct from his previous actions. That was not for him, not for his gain, not for his greed, not so that he could live, again, some lavish lifestyle, but for his family. So you take issue with the district court's characterization of him as a financial predator, but people can characterize a record in different ways. You referred to the district court's clear error. Was that the clear error in calling him a financial predator? Was there another fact that you think is disproven by the record? And then giving the weight that it did to that, what I deem as a mischaracterization that's not supported by the record. Again, there's just no, if we think of a financial predator, we just don't see those facts here. We don't see someone who was again, living a life of luxury. I don't know any other way to put it. He didn't have multiple cars. He abused cars. He was not only supporting his family of two new children in the case that's before this court, but he was previously married and he was also supporting his son and making payments to his former spouse and to his son while his son was in college. So this is not someone who was benefiting personally from any of these games that one would, if they were a financial predator. In saying that your owner also, so giving that weight, that was incorrect. Also the court indicated here, there was a doctor court review that the documents, the evaluation, and the court said that it did not see any causal effect between what was written about Mr. Riley and the actions or the misconduct that we see before the court at the time of sentencing. But in fact, Dr. Heibel had known Mr. Riley for 2017 leading up until sentencing. Mr. Riley would turn to Dr. Heibel in times of crises and he would discuss things that one would discuss with his therapist, his or her therapist. And that's what happened here. We have a minute left. Thank you. The doctor... Would you like to touch on substantive reasonableness for a minute? Mr. Riley's 24 month sentence falls within the undisputed guidelines range of 24 to 30 months. And it's at the bottom of the range of the guidelines range that is established. Why would you say it's exceptional or shockingly high or unsupportable as it needs to be in order to sustain a substantive reasonableness challenge? Thank you. Here it was unduly harsh. It was because it reflected a misunderstanding of the relevant factors in light of the record. Again, using that term, and here's where it comes back, that financial predator term, and relying on that, not weighing the evaluation of the psychological summary by our doctor, and not balancing the two made this unusually harsh. He was not a financial predator. And even though there's no excuse for his actions, the doctor at least placed his actions in context that had the court reviewed everything on balance, then there's no way it could have come out with this 24 month sentence for someone with no criminal history, a first time offender. Thank you, Your Honor. Neeraj Patel. Thank you, Your Honor. May it please the court. My name is Neeraj Patel and I represent the United States in this case. The district court below sentenced the defendant to 24 months of imprisonment at the bottom of the guidelines range for engaging in a scheme in which he used his identity, fraudulently obtained several loans in her name, and then sought to discharge the debt by filing a false bankruptcy petition in her name, all without her knowledge or permission. And he recruited another woman to impersonate his wife. He duped an attorney into filing the false petition in bankruptcy court, and his actions defrauded several financial institutions in excess of $200,000. The district court sentences both procedurally and substantively reasonable. With respect to procedural reasonableness, the court correctly determined the guidelines range to which there is no dispute, and the district court considered all of the 35 to 63A factors. The district court acknowledged that the defendant was a first time criminal offender, but it also took into account the defendant's history of past uncharged fraudulent behavior. And specifically in paragraphs 26 to 39 of the pre-sentence report, it notes that the obtained loans in the names of family members on 19 other occasions going back to 2009. And at sentencing, the defendant was asked if he had any objections to the facts in the pre-sentence report. He said he had no objections, and so the court adopted them. The court was free to consider this undisputed past conduct under the 35 to 63A factors in this court's case law because the conduct bears on the defendant's history and characteristics, such as whether the instant offense was an aberration or part of a larger pattern, and the need for deterrence. And it was based on this history that the district court agreed with the government's description of the defendant as a financial predator. However, it was not this two-word description that the court was relying on in fashioning its sentence. It was the conduct underlying this description, that is the past history that the court was considering as part of imposing sentence, and the court's consideration of that history was not erroneous. The district court also did not err in finding no causal connection between the defendant's mental health and its criminal conduct after reviewing the letter of Dr. Heibel. As the defense counsel stated at sentencing, Dr. Heibel was not retained as an expert. He was not retained to do a forensic evaluation, and his letter was not meant to be a comprehensive report. And as the district court noted, because the court was not provided with an evaluation that made clear whether or not the doctor knew about and took into account the full scope of the defendant's instant offense conduct or its history of fraudulent conduct going back to 2009, the district court did not find a causal effect, and the decision was not clearly erroneous. Finally, your honors, the 24-month sentence, which was at the bottom of the reasonable. The district court considered the defendant's arguments for a non-incarceratory sentence, but rejected them. The court discussed several aggravating factors, including first, the fraud in the bankruptcy court, which it felt was very serious, the number of victims, which included not only the defendant's wife, but also the financial institutions and the bankruptcy court. The court noted the elaborate nature of the scheme, and the court also noted the defendant's history of fraudulently obtaining or attempting to obtain loans in the names of other family members. And in light of these aggravating factors, the court properly exercised its discretion in focusing on the need for just punishment and specific deterrence, and the 24-month sentence of imprisonment, which again was at the bottom of the guidelines range, was reasonable. So for all of these reasons, your honors, and the reasons that courts and the government's brief, the government submits that the sentence below was procedurally and substantively reasonable. Sorry, no other questions. The government would just ask the court to affirm the judgment below. Thank you, your honors. Oh, this is Judge Cabranes. The uncharged bad acts on which Judge Thompson relied, where do they appear in the record? They're in paragraph... Sorry, your honor. Go ahead. They're in paragraph 26 to 39 of the pre-sentence report. Bear with me a moment. And this pre-sentence report was explicitly referred to by Judge Thompson? Yes. And in fact, I believe that sentencing when he was describing this prior bad act specifically made reference to the paragraph in the pre-sentence report, those very paragraphs. And I take it there was no objection to any of these allegations which are in the pre-sentence report. That is correct. They were not disputed. That's correct, your honor. And in fact, in the sentencing transcript, it's page 101 of the joint appendix, the court specifically asked the defense if they had any objections to the facts in the pre-sentence report. And the defense said they had none, the government had none. And so the court stated it was going to adopt the facts in the pre-sentence report. Give that to me again, page 101? 101 of the, yes, of the joint appendix. Yes. Thanks very much. Thank you, your honor. I have no further, anybody else? No. No. Thank you. Thank you. Thank you, your honors. Thank you very much, Mr. Hayes. Thank you. Take a minute or two. Thank you. In response to the government, I do want to note that, again, the sentencing court did not adequately weigh the Dr. Heibel's evaluation, even if it wasn't extensive or as thorough as we would normally have, even if we did not retain him. The doctor summarizes and he discusses Mr. Riley's childhood. He says his childhood and adolescence made it all too easy for him to come up with some way of handling the problem of how to deal with the shortage of income for his family, even a fraudulent one. He was all too capable of rationalizing his behavior and seeing it as helping his family. I say that now to get to paragraphs 29 through 36 of the pre-sentence report, what's consistent throughout those paragraphs was that any fraud or any uncharged conduct was all in the context of his family and trying to help his family. In his previous marriage to his first wife and their two children, and in his second marriage as they were having a family, any of his actions go to what Dr. Heibel described as someone who was basically trying to please, was pathologically accommodating, and would do anything to help his family, even if they were fraudulent acts. These were no uncharged conduct that acted on anyone else outside of his family, friends, any names that we know of, anyone that he knew of or didn't know of. This was his family to help his family. Thank you, Your Honors. Thank you very much. We'll reserve decision in 20-514.